UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADRIAN BANKS,

                Petitioner,           Case Number 2:10-CV-13655
                                                              Honorable Denise Page Hood

v.

LLOYD RAPELJE,

                Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS**

This matter is before the Court on Petitioner Adrian Banks' petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Petitioner is serving a 15 to 30 year sentence resulting from his no contest plea to one count of second-degree murder entered in the Genesee Circuit Court. The petition raises six claims: (1) Petitioner has demonstrated cause and prejudice to excuse any procedural defaults; (2) the plea was involuntary because there was insufficient evidence to support the original charge of first-degree premeditated murder; (3) Petitioner was denied the effective assistance of counsel; (4) the prosecutor erroneously allowed Petitioner to accept an illusory plea agreement; (5) there was cumulative error; and (6) the Michigan Court of Appeals should have considered Petitioner's claims on the merits. The Court finds that Petitioner's claims are without merit. Therefore, the petition is denied. The Court will also deny Petitioner a certificate of appealability and deny any request to proceed on appeal in forma pauperis.

## I. Facts and Procedural History

The charges against Petitioner arose from the shooting death of Freddie Cockrell on November 24, 2003.

At Petitioner's preliminary examination, the victim's wife, Tujuana Cockrell, testified that on the date of the shooting she pulled into the driveway of her house and called for her husband, the victim, to help with the groceries. The victim yelled back from the garage that Petitioner was over and was pointing a gun at him. Tujuana Cockrell went into the garage and saw Petitioner with a gun. Petitioner told Tujuana Cockrell that he had "busted" her husband.

Tujuana Cockrell's sister then pulled up in her car to drop off Tujuana Cockrell's daughter from school. Petitioner then exited the garage, and Freddie Cockrell grabbed a chair and gave chase. Tujuana Cockrell's daughter saw Freddie Cockrell hit Petitioner in the stomach with the chair. She then saw Petitioner shoot Freddie Cockrell and run away. Tujuana Cockrell told her daughter to call 9-1-1. She then ran to her husband who was lying on the ground, shaking. She saw blood come out of his nose and mouth.

Petitioner was arrested after a car and foot chase. The murder weapon was found near the location Petitioner abandoned his vehicle. The victim's wallet was also recovered.

Petitioner was originally charged with both first-degree premeditated murder, first-degree felony murder, armed robbery, felony-firearm, and fleeing from a police officer.

On April 19, 2004, a hearing was held on Petitioner's motion to quash the first-degree premeditated murder charge. The trial court found that sufficient evidence was presented at the preliminary examination to support all of the charges.

On April 28, 2004, the first date set for trial, the terms of a potential plea bargain

were placed on the record. The prosecutor stated that he would dismiss the original charges in exchange for Petitioner's guilty plea to second-degree murder. He stated that the "worst case" sentencing guidelines for Petitioner would be calculated at 18-to-31 years. The trial court explained to Petitioner at length what his various options were and the possible consequences. At the close of the hearing, the matter was adjourned.

On May 19, 2004, the next date set for trial, and with the jury waiting outside the courtroom, Petitioner entered into a plea agreement. The prosecutor stated that Petitioner would plead guilty to second-degree murder without any sentencing agreement. The plea agreement was reduced to writing and Petitioner signed his name to it.

Petitioner stated that he was thirty-four years old and that he understood and agreed to the terms of the plea agreement. Petitioner was then informed of all the trial rights he would be waiving by pleading guilty. Petitioner indicated his understanding. Petitioner agreed that his plea was made freely, understandingly, and voluntarily. He denied that there had been any undue influence, compulsion, or duress to obtain his plea. Petitioner also affirmed that no promises were made to him other than those that were placed on the record. Petitioner also denied that anyone threatened him.

Petitioner then stated that he would plead no contest to the amended charge of second-degree murder. The court accepted the no contest plea because of the potential for civil liability. The trial court referred to the preliminary examination transcript to support a factual basis for the plea. The court accepted the plea.

At the sentencing hearing, the trial court elicited additional facts from the wife of the victim before imposing sentence. Tujuana Cockrell explained that Petitioner had accused the victim of having an affair with Petitioner's girlfriend. Petitioner had been constantly

calling the victim's home. When Tujuana Cockrell returned home on the day of the shooting, Petitioner was holding a gun to her husband's head in the garage. When Petitioner left the garage, her husband pursued him with a chair. She saw Petitioner pointing the gun, but she did not see the shot. She explained: "I know that [Petitioner] knew exactly what he was doing when he came over to the house, and when he fought my husband in the garage, and everything, and like I said, I keep thinking that he would have kept coming back, and kept coming back, until it happened anyway. . . ." Sentencing Transcript, at 31. She explained that her daughter and sister saw Petitioner shoot her husband. Petitioner chose to have his counsel read a letter he wrote explaining his version of events. He claimed that he was leaving the property and the shooting would never have happened if the victim had not hit him with the chair.

Petitioner's counsel argued that too many points were scored for the offense variable dealing with a premeditated intent to kill. He argued that there was no evidence presented at the preliminary examination to support the scoring. The trial court agreed, finding that the shooting was not a premeditated act. The offense variable scoring was lowered to reflect an intentional killing occurring in a combative situation. The guideline range ultimately was scored for the minimum sentence to be between 15 and 25 years. The Court sentenced Petitioner to the bottom of the range, imposing a 15 to 30 year sentence.

Following sentencing, Petitioner appealed his conviction to the Michigan Court of Appeals. His delayed application for leave to appeal raised the following claim:

I. The trial court erred in the scoring of the sentencing guidelines.

The Court of Appeals dismissed the application for leave to appeal because it had not been filed within twelve months of sentencing as required by Michigan Court Rule

7.205(F)(3). *People v. Banks,* No. 264946 (Mich. Ct. App. October 20, 2005). Petitioner did not attempt to appeal this order in the Michigan Supreme Court.

Petitioner returned to the trial court and filed a motion for relief from judgment. The motion raised the same claims that Petitioner presents in the instant habeas petition. The trial court denied the motion in an opinion and order dated August 7, 2008. The trial court found that Petitioner had not demonstrated cause and prejudice as required by Michigan Court Rule 6.508(D)(3) to excuse his failure to raise his new claims on direct review.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The application was denied "for failure to establish entitlement to relief under MICH. CT. RULE 6.508(D)." *People v. Banks*, No. 289989 (Mich. Ct. App. April 24, 2009).

Petitioner applied for leave to appeal this decision in the Michigan Supreme Court. The Michigan Supreme Court found that Petitioner had been deprived of his constitutional right to a direct appeal and remanded the case to the Michigan Court of Appeals to consider his claims under the standard for direct appeals. *People v. Banks*, No. 138909 (Mich. Sup. Ct. December 21, 2009).

On remand, the Michigan Court of Appeals denied Petitioner's application for leave to appeal "for lack of merit in the grounds presented." *People v. Banks*, No. 289989 (Mich. Ct. App. January 22, 2010). Petitioner appealed this decision, but the Michigan Supreme Court denied leave to appeal by a standard order. *People v. Banks*, No. 140534 (Mich. Sup. Ct. July 26, 2010).

Petitioner then commenced the instant action by filing his application for a writ of habeas corpus on September 14, 2010.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)(*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537

U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979)(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

### III. Analysis

**A. Statute of Limitations**

Respondent first asserts that the petition is subject to dismissal because it was filed after expiration of the one-year statute of limitations under 28 U.S.C. § 2244(d). Petitioner did not file a reply brief addressing this defense. Nevertheless, Respondent's argument is not well-taken.

The one year statute of limitation runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A petition for writ of habeas corpus must be dismissed where it has not been filed within the one year statute of limitations. See *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1187 (E.D. Mich. 2001).

Respondent asserts that Petitioner delayed more than one year between the time his first application for leave to appeal was dismissed as untimely by the Michigan Court of Appeals on October 20, 2005, and the date on which he filed his motion for relief from judgment on April 11, 2007. What Respondent fails to take into account is that the Michigan

Supreme Court found that Petitioner had been denied the effective assistance of appellate counsel during his first appeal, and it awarded him a new direct appeal. The statute of limitations did not begin to run under § 2244(d)(2)(A) until the completion of that renewed direct appeal. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) (Conviction held no longer final for statute of limitations purposes after state supreme court granted renewed direct appeal). The renewed direct appeal concluded when the Michigan Supreme Court subsequently denied leave to appeal on July 26, 2010. The statute of limitations began running 90 days later, when the time for filing a petition for a writ of certiorari in the United State Supreme Court expired. *Id.* The petition was timely filed on September 14, 2010, even before the limitations period began to run.

**B. Procedural Default**

Respondent next asserts that review of Petitioner's claims is barred by his procedural default of failing to raise them during his direct appeal. Again, this argument is not well taken.

It is true that the trial court relied on Michigan Court Rule 6.508(D)(3) in denying Petitioner's motion for relief from judgment. This form of adjudication often times results in a procedural default of the claims raised in the motion for relief from judgment. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Respondent again ignores the fact that the Michigan Supreme Court found that Petitioner's direct appeal counsel was ineffective and awarded him a new direct appeal. His habeas claims were then presented again to the Michigan Court of Appeals, and it denied relief on the merits. Because the state court decision denying Petitioner relief with respect to his habeas claims did not rest on a state procedural rule, his claims are not defaulted. *See Durr v. Mitchell*,

487 F.3d 423, 433 (6th Cir. 2007).

The rejection of Respondent's procedural default defense renders moot Petitioner's first claim (asserting he has shown cause and prejudice to excuse any default) and his sixth claim (asserting the state courts should have reviewed his claims on the merits).

### C. Validity of Petitioner's No Contest Plea

Petitioner's substantive habeas claims all hinge on the same basic assertion. Petitioner claims that there was no evidence of premeditation to support the original charge of first-degree premeditated murder, and therefore the plea agreement to second-degree murder was illusory, rendering his plea invalid. As proof, Petitioner points to the fact that during the sentencing hearing, the trial court found that the preliminary examination transcript did not support a finding that Petitioner premeditated the killing.

Petitioner's second, third, and fourth habeas claims each blame a different actor for allowing his plea to occur under these circumstances. His second claim blames the trial court, his third blames his trial attorney, and his fourth blames the prosecutor. All these claims fail for the same reasons. First, the fact that the trial court scored the guidelines in a particular way does not mean that the first-degree premeditated murder charge could not have been supported at trial. Second, even assuming there was no evidence of premeditation, the plea agreement was not illusory because Petitioner was also charged with first-degree felony murder.

To pass constitutional muster, a plea of guilty or nolo contendere must be knowingly and voluntarily made. *See, e.g., Brady v. United States*, 397 U.S. 742, 748 (1970). The defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 257 (6th Cir. 1991). This includes the

defendant's awareness of the maximum sentence that can be imposed for the crime for which he is pleading guilty or nolo contendere. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994).

When a petitioner brings a federal habeas petition challenging his plea of guilty or nolo contendere, the state generally satisfies its burden of showing that the plea was made voluntarily by producing a transcript of the plea proceedings. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). "The factual findings of a state court that the plea was proper generally are accorded a presumption of correctness." *Id.* (citing *Dunn v. Simmons*, 877 F.2d 1275 (6th Cir. 1989)). A habeas petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.* at 328.

Petitioner alleges that his plea was involuntary because the plea bargain was illusory, in that there was insufficient evidence of premeditation to charge him with first-degree murder. A plea agreement is entered into involuntarily and unknowingly if the defendant is unaware that the prosecution's promise is illusory. *See United States v. Randolph*, 230 F.3d 243, 250-51 (6th Cir. 2000). Illusory representations made by the prosecutor to induce a defendant to waive his right to trial and enter a guilty plea have been found to constitute coercion justifying the withdrawal of a guilty plea. *See Spearman v. United States*, 860 F. Supp. 1234, 1249 (E.D. Mich. 1994). However, a plea bargain is not illusory even where a charge dropped in exchange for the plea bargain is later discovered to have lacked an adequate foundation or sufficient evidence. *See United States v. Quisenberry*, Nos. 98-3618, 98-3994, 98-4156, 1999 U.S. App. LEXIS 30168, 1999 WL 1073659, at *6 (6th Cir. Nov. 17, 1999); *see also United States v. Morgan*, 958 F.2d 847, 849 (8th Cir. 1992) (holding that the fact that two of the seven counts against the defendant

were invalidated because the defendant's conduct was determined not to violate the relevant statutes did not entitle the defendant to withdraw his entire guilty plea).

Prior to the plea hearing, the trial court held a hearing on Petitioner's motion to quash the first-degree premeditated murder charge, and it found that sufficient evidence was presented at the preliminary examination to bind over the Petitioner on that charge. The standard for determining whether sufficient evidence was offered at the examination to support the charge asks merely whether probable cause exists to believe that the defendant committed the crime. *People v. Orzame*, 224 Mich. App. 551, 558 (1997). "Probable cause requires a quantum of evidence 'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief' of the accused's guilt." *People v. Yost*, 468 Mich. 122, 126 (2003)(quoting *People v. Justice (After Remand)*, 454 Mich. 334, 344 (1997)). Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to support binding over the defendant if such evidence establishes probable cause. Indeed, even minimal circumstantial evidence is sufficient to prove intent because of the difficulty in proving a defendant's state of mind. *People v. McRunels*, 237 Mich. App. 168, 181 (1999).

The evidence presented at the preliminary examination included testimony that Petitioner went over to the victim's house armed with a handgun, confronted him the garage, held the gun to his head, and then later shot him to death. While it is true there was also evidence presented that Petitioner only shot the victim after he attempted to leave and was chased and struck by the victim, the evidence was certainly "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Yost, supra.*

The fact that the trial court in scoring the sentencing guidelines later found that the murder was not premeditated does not mean that Petitioner could not have been tried and convicted for first-degree premeditated murder. A trial court determines the sentencing variables by reference to the record, using the standard of preponderance of the evidence. *People v. Drohan*, 475 Mich. 140, 142-143 (2006). Information relied upon to score the guidelines may come from various sources, including some that would not be admissible at trial. *See People v. Potrafka*, 140 Mich. App. 749, 751-52 (1985). For reasons not disclosed on the record, the trial court decided to rely merely on the preliminary examination transcript to determine by a preponderance of the evidence whether there was premeditation. Likewise, rather than contest the scoring, the prosecutor chose to concede the point. It does not follow from this that the charge could not have been supported at trial if Petitioner had not accepted the plea deal. The charge of first-degree premeditated murder was not doomed to fail at trial, and Petitioner gained a tangible benefit from having it dismissed as part of his plea bargain.

Even setting aside that first-degree premeditated murder charge, Petitioner was also charged with first-degree felony murder. If convicted of this charge, Petitioner faced a sentence of mandatory life imprisonment. See MICH. COMP. LAWS § 750.316. The evidence at the preliminary examination showed that Petitioner had the victim's wallet when he left the scene. Again, while it appears Petitioner claims that he had the wallet to prove that the victim was having an affair, there existed a reasonably possibility that he could have been convicted of felony-murder. Accordingly, Petitioner obtained a tangible benefit from having this charge dismissed as part of the plea bargain.

Because Petitioner derived a real benefit from his plea bargain in this case, his plea

was not illusory. *See McAdoo v. Elo*, 365 F.3d 487, 498 (6th Cir. 2004). It follows that his attorney was not ineffective for allowing him to enter into an allegedly illusory bargain and that the prosecutor did not commit misconduct by offering the bargain. Petitioner's second, third, and fourth claims are without merit.

### D. Cumulative Error

Petitioner's fifth claim contends that he is entitled to habeas relief because of cumulative error. The cumulative weight of alleged constitutional errors in a state prosecution does not warrant federal habeas relief, because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Petitioner is not entitled to habeas relief on the grounds of cumulative error.

### IV. Certificate of Appealability/Appeal In Forma Pauperis

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review,

but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims. For the same reasons noted above, the Court denies any request by Petitioner to proceed on appeal in forma pauperis because an appeal would not be taken in good faith.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: November 30, 2012


I hereby certify that a copy of the foregoing document was served upon Adrian Banks #498455, 9625 Pierce Road, Freeland, MI 48623 and counsel of record on November 30, 2012, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager